**OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND, a Trust; Operating Engineers Pension Trust Fund, a Trust; Operating Engineers Vacation–Savings Trust Fund, a Trust; Operating Engineers Joint Apprenticeship Program, a Trust, Plaintiffs–Appellants,**

**and**

**United States of America, for the use and benefit of Arizona State Carpenters Health and Welfare Trust Fund, Arizona State Carpenters Vacation–Savings**

---

672

Trust Fund, Arizona State Carpenters Joint Apprenticeship Program, Operating Engineers Health and Welfare Trust Fund, Operating Engineers Pension Trust Fund, Operating Engineers Vacation–Savings Trust Fund, and Operating Engineers Joint Apprenticeship Programs; Arizona State Carpenters Health and Welfare Trust Fund; Arizona State Carpenters Pension Trust Fund; Arizona State Carpenters Vacation–Savings Trust Fund; Arizona State Carpenters Joint Apprenticeship Program, Plaintiffs,

v.

JWJ CONTRACTING CO., Defendant,

and

The Continental Insurance Companies, a New Hampshire corporation, Defendant–Appellee.

ARIZONA STATE CARPENTERS HEALTH AND WELFARE TRUST FUND; Arizona State Carpenters Vacation–Savings Trust Fund; Arizona State Carpenters Joint Apprenticeship Program; Arizona State Carpenters Pension Trust Fund, a Trust, Plaintiffs–Appellants,

and

United States of America, for the use and benefit of Arizona State Carpenters Health and Welfare Trust Fund, Arizona State Carpenters Vacation–Savings Trust Fund, Arizona State Carpenters Joint Apprenticeship Program, Operating Engineers Health and Welfare Trust Fund, Operating Engineers Pension Trust Fund, Operating Engineers Vacation–Savings Trust Fund, and Operating Engineers Joint Apprenticeship Programs; Operating Engineers Health and Welfare Trust Fund, a Trust; Operating Engineers Pension Trust Fund, a Trust; Operating Engineers Vacation–Savings Trust Fund, a Trust; Operating Engineers Joint Apprenticeship Program, a Trust, Plaintiffs,

v.

JWJ CONTRACTING CO., an Arizona corporation, Defendant,

and

Continental Ins. Co., a New Hampshire corporation, Defendant–Appellee.

Nos. 96–16709, 96–16721.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 18, 1997.

Decided Feb. 2, 1998.

Michael J. Keenan, Ward, Keenan & Barrett, Phoenix, Arizona, for the plaintiffs-appellants; April D. Miller, Charles T. Stegall, Lee, Stegall & Katz, Phoenix, Arizona, for plaintiffs-appellants.

Curtis A. Jennings, Paul S. Ruderman, Edward Rubacha, Jennings & Haug, Phoenix, Arizona, for defendants-appellees.

Before: KOZINSKI, MAYER,* * and FERNANDEZ, Circuit Judges.

MAYER, Circuit Judge:

The United States for the Use of Arizona State Carpenters Pension Fund, a trust; Arizona State Carpenters Health & Welfare Trust Fund, a trust; Arizona State Carpenters Vacation Savings Trust Fund, a trust; Arizona State Carpenters Joint Apprenticeship Program, a trust, *et al.* (collectively "Carpenters Trust Funds"), and the United States for the use and benefit of (a trust), Operating Engineers Health and Welfare Trust Fund; the United States for the use and benefit of (a trust), Operating Engineers Joint Apprenticeship Program; the United States for the use and benefit of (a trust) Operating Engineers Vacation–Savings Trust Fund (collectively "Operating Engineers Trust Funds") separately appeal the judgment of the United States District Court for the District of Arizona, Docket No. CIV 94–2122–PHX–SMM, granting summary judgment in favor of JWJ Contracting Company, Inc. ("JWJ") and Continental Insurance Company ("Continental") on the Trust Funds' Miller Act claim and dismissing their remaining claims. We reverse the judgment as to the Little Miller Act claim, affirm the judgment in all other respects, and remand.

*Background*

JWJ entered into public-works contracts with the following Arizona state and municipal entities: the Arizona Department of Transportation ("ADOT") for bridge construction work near Cordes Junction and Cottonwood, Arizona; the city of Phoenix for parking lot construction work in the Cave Creek Detention Basin; the city of Tempe for city street improvements; the city of Phoenix with funding from the Federal Aviation Administration ("FAA") for ramp construction work at Sky Harbor International Airport; and ADOT with funding from the Federal Highway Administration ("FHA") for improvements to two interstate highways, construction of a state route to benefit federal land and resource management activities, and the removal of a bridge connecting two interstate highways and construction of its replacement.

To perform its obligations under these contracts, JWJ signed collective bargaining agreements to employ members of the Operating Engineers and Arizona State Carpenters unions, who are beneficiaries, respectively, of the Operating Engineers Trust Funds and the Carpenters Trust Funds (collectively "Trust Funds"). The Trust Funds are multiemployer Taft–Hartley trust funds created pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and are administered according to the Employee

---

* United States Circuit Judge for the Federal Circuit, sitting by designation. Judge Mayer assumed the position of Chief Judge on December 25, 1997.

Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). As part of the Master Labor Agreements, these parties entered into various trust agreements, under which JWJ posted bonds, as required by Arizona law, Ariz.Rev.Stat. § 34–222(A)(2), on each of the projects. Along with these bonds, JWJ was required to report to the coordinators of the Trust Funds the number of hours worked by union employees and the amount of money JWJ withheld from paychecks to make its contributions. In May 1992, JWJ arranged for Continental, as its surety, to begin issuing statutory surety bonds for the labor and materials that it used for these projects, which Continental did on state-approved forms, pursuant to state law, and for the benefit of the various Arizona state and municipal entities.

JWJ did not pay over the contributions it withheld between December 27, 1993, and July 3, 1994, yet the Trust Funds allowed JWJ to forgo these contributions until JWJ filed for bankruptcy. To collect the delinquent contributions, the Trust Funds filed suit in the United States District Court for the District of Arizona, demanding a jury trial. The Trust Funds sought payment under the Miller Act, 40 U.S.C. §§ 270a–270f; the Little Miller Act, Ariz.Rev.Stat. §§ 34–222, 34–223; the Davis–Bacon Act, 40 U.S.C. § 276a—a–7; ERISA, 29 U.S.C. § 1002; and the Labor Management Relations Act, 29 U.S.C. § 185 et seq.

The district court granted Continental's motions to dismiss claims based on the Little Miller Act (because it is preempted by ERISA), the Davis–Bacon Act (because it does not confer federal rights upon aggrieved laborers), and the Labor Management Relations Act (because jurisdiction for breach of the collective bargaining agreement does not exist where the action is not focused on the collective bargaining agreement). After further discovery and pursuant to a stipulation by the parties, the district court granted Continental's motion to dismiss the breach of ERISA claim, which left for resolution only the Miller Act claim. Concluding that the projects at issue were not "public works of the United States," the district court granted

Continental's motion for summary judgment for lack of jurisdiction over this claim.

## Discussion

The Trust Funds appeal the judgment of the district court as it relates to claims based on the Miller Act, the Little Miller Act, the Davis–Bacon Act, and for granting judgment without giving them the opportunity to amend their complaint to assert jurisdiction under 28 U.S.C. § 1352 (1994). We review the district court's interpretation and application of ERISA provisions in determining preemption of state law *de novo*. *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir.1996). We also review the district court's grant of summary judgment *de novo*, to determine whether it correctly applied the relevant substantive law. *Id.*

### A. *Miller Act*

The Trust Funds argue that eight of the projects were federally funded and are "public works of the United States" within the meaning of 40 U.S.C. § 270a, because the federal government was authorized to expend funds on these projects, these funds constituted the majority share of the funding for each project, the federal government was intimately involved in the control and monitoring of the projects, and the projects were constructed for the benefit of the general public. Although there is no clear test for designating a project a "public work of the United States," courts often look to the following as indicia: whether the United States is a contracting party, an obligee to the bond, an initiator or ultimate operator of the project; whether the work is done on property belonging to the United States; or whether the bonds are issued under the Miller Act. *See, e.g., United States ex rel. Noland Co. v. Irwin*, 316 U.S. 23, 62 S.Ct. 899, 86 L.Ed. 1241 (1942); *see also* Russell G. Donaldson, Annotation, *What Constitutes "Public Work" Within Statute Relating to Contractor's Bond*, 48 A.L.R.4th 1170 (1986).

The absence of all of these indicia need not be determinative in this case, but it is unlikely that JWJ and Continental would have issued the bonds in the sum of the total amount payable by the terms of the contract,

as is required by Arizona law, Ariz.Rev.Stat. § 34–222(A)(1) when it could have issued them pursuant to the Miller Act, 40 U.S.C. § 270a(a)(2), at half that amount. Moreover, these projects are not "for the protection of the United States" or "furnished to the United States," as section 270a requires. Thus, we agree that the district court properly dismissed the Miller Act claim for lack of jurisdiction.

## B. *Davis–Bacon Act*

■ The Carpenters Trust Funds argue that the district court dismissed their cause of action under the Davis–Bacon Act, 40 U.S.C. 276a *et seq.*, because it improperly interpreted section 276a as not permitting a private right of action and because it failed to consider its cause of action under section 276a–2. The Davis–Bacon Act was intended as a "general prohibition or command to a federal agency" to require minimum wage stipulations for federal government work contracts; it does not generally grant a private cause of action directly to employees. *Rapid Transit Advocates, Inc. v. Southern California Rapid Transit Dist.*, 752 F.2d 373, 376 (9th Cir.1985) (quoting *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981)). For the reasons set out in *Coutu*, we agree with the district court, and the majority of circuit courts that have reached the issue, that section one of the Davis–Bacon Act, 40 U.S.C. § 276a, does not create a private cause of action for employees. In addition, we agree that section three of the Act, 40 U.S.C. § 276a–2, does not create a private right of action under these circumstances because: that section does not authorize suit for back wages, the Trust Funds were not "laborers and mechanics," and had the Trust Funds been assigned such rights, no allegations were made that the Comptroller General withheld insufficient funds to pay the deficit. Finally, to the extent that this Davis–Bacon Act claim is premised on a determination that Continental's payment bonds are Miller Act bonds, our reasoning above removes any possibility that the Trust Funds can prevail.

## C. *28 U.S.C. § 1352*

■ The Carpenters Trust Funds also argue that the district court erred in granting judgment without giving them the opportunity to assert an additional basis for jurisdiction under 28 U.S.C. § 1352 (1994). Because the court had jurisdiction to resolve this dispute through the Little Miller Act and Davis–Bacon Act claims, its failure to provide the Carpenters Trust Funds an opportunity to assert an additional basis for jurisdiction was harmless. Moreover, Section 1352 is not here applicable because it confers original jurisdiction to district courts for "any action on a bond executed under any law of the United States." Not only were these bonds not executed under the laws of the United States, but the regulation under which they assertedly were issued, 49 C.F.R. § 18.36(h), applies to "other grantee[s]," which in this case may include bonds issued on city of Phoenix projects, but not bonds issued on state of Arizona projects, which are regulated by 49 C.F.R. § 18.36(a).

## D. *Little Miller Act*

■ The Trust Funds argue that the district court improperly dismissed the Little Miller Act claim because it misinterpreted the proper scope of ERISA pre-emption of state law. Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans" and to "eliminate the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 99, 103 S.Ct. 2890, 2896, 2901, 77 L.Ed.2d 490 (1983). Toward these ends, section 514(a), 29 U.S.C. § 1144(a), provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." The Act further defines an employee benefit plan as "any plan, fund, or program," 29 U.S.C. § 1002(1), and "state law" as "all laws, decisions, rules, regulations, or other State action having the effect of law," *id.* § 1144(c)(1). Focusing on the language "relate to" and "any and all State laws," the Supreme Court has repeatedly emphasized the breadth of this federal pre-emption. *District of Columbia v. Greater*

*Washington Board of Trade,* 506 U.S. 125, 127, 113 S.Ct. 580, 582, 121 L.Ed.2d 513 (1992) ("ERISA's pre-emption provision assures that federal regulation of covered plans will be exclusive.") *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) ("to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be preempted"); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) ("express preemption provisions of ERISA are deliberately expansive"); *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2901 ("The Conference Committee rejected [a limited pre-emption clause] in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language"); *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) ("establish[ed] pension plan regulation as exclusively a federal concern").

█ Of late, the Court has come to recognize that ERISA pre-emption must have limits when it enters areas traditionally left to state regulation-such as the state's exercise of police powers and its regulation of health, safety, banking, securities, and insurance matters. *See De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. ——, ——, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997) ("In our earlier ERISA pre-emption cases, it had not been necessary to rely on the expansive character of ERISA's literal language in order to find pre-emption because the state laws at issue in those cases had a clear 'connection with or reference to' ERISA benefit plans. But in *Travelers* we confronted directly the question whether ERISA's 'relates to' language was intended to modify 'the starting presumption that Congress does not intend to supplant state law.' ") (citations to *Shaw* and *Travelers* omitted); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *District of Columbia,* 506 U.S. at 127, 113 S.Ct. at 582.

█ This recognition now requires courts to "go beyond the unhelpful text and

the frustrating difficulty of defining its key term ["relate to"] and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Travelers,* 514 U.S. at 656, 115 S.Ct. at 1677. It also requires us to look at the "actual operation of the state statute," *De Buono,* 520 U.S. at ——, 117 S.Ct. at 1752. In conducting this examination, the Court has warned not "to read the pre-emption provision" in such a way as to "effectively read the limiting language in § 514(a) out of the statute, a conclusion that would violate basic principles of statutory interpretation...." *Travelers,* 514 U.S. at 661, 115 S.Ct. at 1679. It has also stated that "[p]re-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." *District of Columbia,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (citations omitted).

The Court has provided the following guidance about Congressional intent: "While Congress's extension of pre-emption to all 'state laws relating to benefit plans' was meant to sweep more broadly than 'state laws dealing with the subject matter covered by ERISA[,] reporting, disclosure, fiduciary responsibility, and the like,' nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Travelers,* 514 U.S. at 661, 115 S.Ct. at 1680 (quoting *Shaw,* 463 U.S. at 98, and n. 19, 103 S.Ct. at 2900, and n. 19; other citations omitted). "We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort." *California Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. ——, ——, 117 S.Ct. 832, 842, 136 L.Ed.2d 791 (1997).

█ The Court has also supplanted Congress' ambiguous "relates to" language with its own analysis: whether the state law "has a connection with or reference to" employee benefit plans. *District of Columbia,* 506 U.S.

at 129, 113 S.Ct. at 583 (quoting *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900). "[T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans." *Dillingham,* 519 U.S. at ——, 117 S.Ct. at 838 (internal quotations marks and citations to *Travelers* omitted). To aid in determining whether a state law is connected with an ERISA benefit plan, this court has identified the following factors:

> (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
>
> (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
>
> (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and
>
> (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*Aloha Airlines, Inc. v. Ahue,* 12 F.3d 1498, 1504 (9th Cir.1993) (citations omitted; formatting added).

■■■ Similarly, "[w]here a State's law acts immediately and exclusively upon ERISA plans, as in *Mackey* [*v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)], or where the existence of ERISA plans is essential to the law's operation, as in *Greater Washington Bd. of Trade* and *Ingersoll–Rand,* that 'reference' will result in pre-emption." *Dillingham,* 519 U.S. at ——, 117 S.Ct. at 838. Though this "two-pronged" analysis does not remove all the ambiguity, it does alter the focus of our inquiry. *See WSB Elec.,* 88 F.3d at 792–93 (discussing varying interpretations of the language "reference to" and "connection with").

The district court dismissed the Trust Funds' claim under Arizona's Little Miller Act, Ariz.Rev.Stat. §§ 34–222, 34–223, because it "relates to" an employee benefit plan by "adding [plan enforcement rights] to the terms of a plan." Because the Act does not purport to regulate insurance, the district court further held that it is not saved from ERISA pre-emption. *See* 29 U.S.C. § 1144(b)(2)(A). The district court's judgment was issued before the *Travelers* case. So we must apply anew the Court's recent articulation of the scope of ERISA pre-emption.

As we have said, Congress intended ERISA to promote employee's (and their beneficiaries') interests and eliminate conflicting or inconsistent state and local regulation of employee benefit plans. Nothing in ERISA suggests that it was intended to pre-empt either the area of state statutory payment bonds or their guarantee by third-party sureties. In contrast, Arizona's Little Miller Act is a public-works statute that protects employees from payment defaults by requiring contractors to issue payment bonds through sureties, who become liable to trust funds that are intended beneficiaries of the bond agreement. Section 34–222 of the Act sets forth substantive requirements for bonding contractors hired to perform work on public projects. Section 34–223(a) prescribes procedural mechanisms for enforcing the payment bonds. In short, the Act regulates an area that Congress has traditionally left to the states: enforcing rights and obligations arising by contract, pursuant to state law, for the protection of the public.

Although the parties dispute the extent to which the Little Miller Act "relates to" ERISA benefit plans, it is clear from the objectives of the two, and from the factors set forth in *Aloha Airlines,* that the Act is not "connected to" ERISA benefit plans. Arizona's Little Miller Act does not regulate ERISA benefits, it does not require the establishment of a separate benefit plan, and it imposes no new reporting, disclosure, funding, or vesting requirements for ERISA plans. The Act can be seen as regulating certain ERISA relationships-specifically the relationship between ERISA trust funds and an employer's surety-but as a third party guarantor of an extant contractual relationship, this intrusion of state law into ERISA

territory is too "tenuous, remote, or peripheral" to arouse pre-emption.

Before *Travelers*, this court simplified the "relates to" determination by asking: "Is the state telling employers how to write their ERISA plans, or conditioning some requirement on how they write their ERISA plans? Or is it telling them that regardless of how they write their ERISA plans, they must do something else outside and independently of the ERISA plans? If the latter ... there is no preemption." *WSB Elec.*, 88 F.3d at 796 (quoting *Employee Staffing Serv., Inc. v. Aubry*, 20 F.3d 1038, 1041 (9th Cir.1994)). Although the Supreme Court has altered our inquiry from the broader "relates to" analysis to the more specific "reference to and connection with" analysis, we again find *Employee Staffing's* simplified test enlightening. As in *WSB Elec.*, Arizona's Little Miller Act does not tell employers how to write ERISA benefit plans, and it does not condition requirements on how the ERISA benefit plan is written. Rather, it requires public-work project employers to issue payment bonds through sureties, regardless of the existence or nature of the ERISA benefit plans.

It is also clear that Arizona's Little Miller Act does not "reference" ERISA benefit plans because it was enacted in 1919, before ERISA, employee benefit plans, and these types of trust fund contributions. Simply put, the Act does not act upon ERISA plans or depend on their existence.

Citing this court's pre-*Travelers* opinions in *Trustees of the Electrical Workers Health and Welfare Trust v. Marjo Corp.*, 988 F.2d 865 (9th Cir.1992) (enforcement mechanism of a Nevada statute permitting an action to collect contributions from subcontractors held pre-empted because it supplements remedies provided by ERISA), and *Carpenters Health and Welfare Trust Fund for California v. Tri Capital Corp.*, 25 F.3d 849 (9th Cir.1994) (California stop notice lien statute and third party beneficiary statute permitting action to collect from construction lenders held preempted because they supplement remedies already provided by ERISA), Continental argues that ERISA's remedies against employers who fail to pay to benefit plans the employee contributions they withhold are exclusive and cannot be supplemented by Arizona's statute providing remedies against sureties. The statutes involved in both *Marjo* and *Tri Capital* provided remedies against third parties who never directly agreed to make contributions to ERISA trust funds when the employer failed to do so. By making additional parties liable to plan employees, these state statutes expand remedies by offering additional substantive mechanisms beyond what was contemplated by ERISA to solve the problem for which ERISA was created. In contrast, as JWJ's surety, Continental's contractual agreement to issue payment bonds transfers the obligation from the employer to its underwriter, for the protection of employees, and does not expand the remedies provided or contemplated by ERISA. This contractual relationship merely substitutes obligors.

Perhaps more importantly, however, this court decided both *Marjo* and *Tri Capital* before *Travelers*. If the breadth of federal pre-emption described in *Marjo* and *Tri Capital* were still good law, Continental would probably prevail. However, these cases rely on expansive language from the Supreme Court demonstrating an understanding of ERISA pre-emption that has since been tailored to better fit Congress's policy intentions.

### Conclusion

Accordingly, because Arizona's Little Miller Act provides no additional rights to employee benefit plans and it neither conflicts with federal regulation of employee benefit plans nor hinders or detracts from the interests of employees who partake of these plans, we reverse the judgment of the district court to the extent it dismissed the Trust Funds' Little Miller Act claim, affirm in all other respects, and remand the case for further proceedings consistent with this opinion.

We deny the parties' requests for attorneys fees and costs.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**