[Nos. 22293-1-II; 22562-0-II.   Division Two.   December 23, 1998.]

*In the Matter of the Estate of* DAVID A. EGELHOFF.

SAMANTHA EGELHOFF, ET AL., *Appellants*, v. DONNA RAE EGELHOFF, ET AL., *Respondents*.

316

*Michael W. Jordan* of *Jordan, Imler & McGovern*, for appellants.

*Ryan D. Rein* and *Henry Haas* of *McGavick Graves Beale & McNerthney*, for respondents.

HUNT, J. — Decedent David Egelhoff's children from his first marriage appeal the grant of summary judgment to his second wife, Donna Egelhoff.[1] The trial court awarded to Donna, the named beneficiary, the proceeds of David's employer-provided life insurance and his pension plan benefits, even though she and David had dissolved their marriage more than two months before his death. The trial court reasoned that ERISA[2] preempted state law, which otherwise could operate automatically to redesignate beneficiaries upon dissolution of a marriage. Holding that ERISA does not preempt the state law in question and that Donna was not entitled to the insurance proceeds or pension funds, we reverse.

## FACTS

David and Donna Egelhoff married on November 4, 1988; they separated on October 1, 1993. During their marriage, David had named Donna as the beneficiary of his life insurance policy and his pension plan, both provided by his employer, the Boeing Company. The decree of dissolution was entered on April 22, 1994. As part of the property settlement distribution, David was awarded "100% of his Boeing retirement 401K[3] and IRA.[4]"

---

[1]For ease of reference we refer to the parties by their first names; we mean no disrespect.

[2]Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.

[3]Defined by 26 U.S.C. § 401(k).

[4]Defined by 26 U.S.C. § 408(a).

318

On June 23, 1994, David was involved in a serious car accident. On July 8, 1994, he died from his injuries. Donna was still listed as the beneficiary of both David's insurance policy and his pension plan. David died intestate.

David's statutory heirs,[5] his children from his first marriage, filed suit, alleging that under the dissolution decree's property distribution settlement, Donna had waived her rights to the pension plan. After Donna received the insurance proceeds, the children filed a conversion action, alleging that Washington law, specifically RCW 11.07.010, had operated to remove her as the beneficiary of the insurance policy.

The trial court entered summary judgment for Donna as to both benefits. The trial court ordered that the insurance policy be "administered in accordance with the Employee Retirement Income Security Act and the designated beneficiary, Donna Rae Egelhoff shall have all legal rights to the proceeds which have been paid thereto."[6] The trial court similarly ordered that the pension plan should be "administered in accordance with the Employ[ee] Retirement Income Security Act of 1974 (ERISA) and that the designated beneficiary, Donna Rae Egelhoff shall have all legal rights thereto[.]" The trial court stayed the order for summary judgment with regard to the pension plan proceeds, directing that they not be distributed to any party pending the outcome of this appeal. As noted above, the insurance

[5]RCW 11.04.015 provides that:

The net estate of a person dying intestate . . . shall be distributed as follows:

. . .

(2) Shares of others than surviving spouse. The share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse, shall descend and be distributed as follows: To the issue of the intestate; if they are all in the same degree of kinship to the estate, they shall take equally, or if of unequal degree, then those of more remote degree shall take by representation.

[6]The trial court apparently disregarded an affidavit from the children's mother, David's first wife, attesting to Donna's statements that she knew David had intended to remove her as beneficiary of his life insurance policy and would be angry if he knew Donna had received the proceeds.

proceeds had already been distributed to Donna before the litigation commenced.

The children timely appealed and we consolidated the appeals.[7]

## ANALYSIS
## I. STANDARD OF REVIEW

When reviewing a trial court's order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* CR 56(c), *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). Summary judgment should be granted only if reasonable persons could reach but one conclusion, after considering the evidence in the light most favorable to the nonmoving party. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998).

## II. FEDERAL LAW

■ The pension plan and insurance policy at issue in this case fall under ERISA because they were provided by David's employer, the Boeing Company. ERISA regulates all employee benefits plans sponsored by an employer or an employee organization. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 756, 881 P.2d 216 (1994).

## III. STATE LAW

The children rely on RCW 11.07.010 to support their claim that they, and not Donna, should receive both the proceeds of the pension plan and the insurance policy.

RCW 11.07.010 provides:

---

[7]Because we hold that RCW 11.07.010 is not preempted by ERISA, we need not address the children's alternative assertion that Donna "waived" her right to the pension proceeds via the dissolution decree.

### Nonprobate assets on dissolution or invalidation of marriage

(1) This section applies to all nonprobate assets, wherever situated, held at the time of entry by a superior court of this state of a decree of dissolution of marriage or a declaration of invalidity.

(2)(a) *If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked.* A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.

. . . .

(5) As used in this section, "nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under only the following written instruments or arrangements other than the decedent's will:

(a) *A payable-on-death provision of a life insurance policy, employee benefit plan,* annuity or similar contract, or individual retirement account[.]

(Emphasis added.)

Donna argues that ERISA preempts RCW 11.07.010. If not preempted by ERISA, this statute would operate to revoke Donna's status as beneficiary upon dissolution of her marriage to David. This would leave no beneficiary listed on either the life insurance or pension plan. As a result, under the terms of the pension plan, the children would receive David's pension benefits.[8]

■ ■ With regard to the life insurance plan, RCW

---

[8]"If you have not designated a beneficiary on the appropriate form, you have an invalid beneficiary designation, or your beneficiary is no longer living, benefits will be paid in the following sequence:

"1. To your surviving spouse.

48.24.160, which governs beneficiaries under group life insurance plans, seems to indicate that every plan should contain a designation of how benefits will be paid should no beneficiary be listed at the time of decedent's death.[9] But the life insurance plan in this case contains no such designation. Because there are no relevant reported cases interpreting RCW 11.07.010, an analogy to the Uniform Simultaneous Death Act (USDA) is helpful: Both the USDA and RCW 11.07.010 operate, under certain circumstances, to treat the holder of life insurance as surviving the beneficiary as a matter of law. Under the USDA, where the beneficiary is treated as having predeceased the policyholder, the proceeds of a life insurance policy belong to the policyholder's estate, RCW 11.05.040, unless the insurance plan designates an alternate procedure for determining a beneficiary. RCW 48.18.390. Where such a policyholder has left no will, his statutory heirs inherit the proceeds. *In re Estate of Saunders*, 51 Wn.2d 274, 276, 317 P.2d 528 (1957); *In re Estate of Clise*, 64 Wn.2d 320, 321, 391 P.2d 547 (1964).

Similarly, under RCW 11.07.010, we treat David as having survived Donna for purposes of distributing life insurance proceeds. As a result, the life insurance proceeds should have been paid first to David's estate and then to his children (as his statutory heirs) as part of his estate. Thus, under RCW 11.07.010, the children, and not Donna, were entitled to both the insurance proceeds and the pension benefits.

## IV. PREEMPTION

██ ██ ERISA preempts state laws that "relate to" em-

---

"2. If there is no surviving spouse, to your children in equal shares."

[9]"There shall be a provision that any sum becoming due by reason of the death of the individual insured shall be payable to the beneficiary designated by such individual, subject to the provisions of the policy in the event there is no designated beneficiary . . . ." RCW 48.24.160.

ployee benefits plans.[10] We construe this phrase in accordance with Congress's intent in enacting ERISA—to provide uniformity in the administration of benefit programs. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987). If state law affects ERISA-covered plans in "too tenuous, remote, or peripheral a manner," the state law does not "relate[] to" the plan and is therefore not preempted. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).

■ The Supreme Court has recently[11] suggested that ERISA preemption should be limited with regard to areas traditionally left to state regulation. *See De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 117 S. Ct. 1747, 1751, 138 L. Ed. 2d 21 (1997). Courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term ['relate to'], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield*

---

[10]29 U.S.C. 1144(a) provides, in relevant part, that:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

[11]Earlier, the Supreme Court had interpreted ERISA's preemption statute as creating a "deliberately expansive" preemption of state law. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987). In *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990), the Court ruled that "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." The Washington Supreme Court's traditional analysis of ERISA "preemption" is illustrated by *Cutler*, 124 Wn.2d at 763, in which it relied primarily on *Ingersoll-Rand*'s holding that employees' state law claims were preempted when they directly conflicted with an ERISA cause of action or rested upon the existence of an ERISA plan. *Ingersoll-Rand*, 498 U.S. at 140. As recently as 1996, the Washington Supreme Court indicated that ERISA "preempts any state law touching on ERISA benefit plans, even if those laws merely supplemented the Act and were consistent in purpose." *Stevedoring Servs., Inc. v. Eggert*, 129 Wn.2d 17, 26, 914 P.2d 737 (1996).

*Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).

Washington courts have also noted this change in the focus of ERISA preemption analysis. Division One has indicated that preemption is appropriate if it advances "ERISA's goal of providing uniform resolution of disputes for which an ERISA remedy [is] available." *Behavioral Sciences Inst. v. Great-West Life*, 84 Wn. App. 863, 871-72, 930 P.2d 933 (1997).

> Rather than basing preemption on the mention of an ERISA plan in the complaint, we choose to apply a holistic approach to ERISA preemption emphasizing congressional intent and the purpose of ERISA.

*Behavioral Sciences*, 84 Wn. App. at 872. Division One has also ruled, "[W]e presume that ERISA does *not* supercede the historic police powers of the states unless that was the clear and manifest purpose of Congress." *Kahn v. Salerno*, 90 Wn. App. 110, 133, 951 P.2d 321 (1998).

Following Division One, we "begin our analysis with the presumption that ERISA does not preempt" the state law in question here—that spouses named as insurance and pension beneficiaries automatically lose such designation upon dissolution of marriage. *Kahn*, 90 Wn. App. at 134; *See also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997). "Thus, the burden is on the party arguing for preemption to show, as a matter of law, that it was the clear and manifest purpose of Congress to supersede this type of . . . claim." *Kahn*, 90 Wn. App. at 134.

■ The most comprehensive summary of the current state of ERISA preemption law is *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 953 (9th Cir. 1998) (citing *Toumajian v. Frailey*, 135 F.3d 648, 654 n.3 (9th Cir. 1998)), in which the Ninth Circuit noted that "[r]ecently, the scope of this broad 'relate to' preemption was markedly narrowed." The *Emard* court ruled:

> To guide our preemption analysis within the specific context of

ERISA, we ask whether the state law at issue has (1) a "reference to" or (2) a "connection with" an ERISA plan.

*Emard*, 153 F.3d at 954.

A state law has "reference to" an ERISA plan where it "acts immediately and exclusively upon ERISA plans, . . . or where the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 325. RCW 11.07.010 does not act "immediately and exclusively upon ERISA plans," nor is the existence of ERISA plans "essential to the law's operation." Consequently, RCW 11.07.010 does not have a "reference to" ERISA plans and is preempted only if it has a "connection with" ERISA benefit plans.

The *Emard* court considered four factors in determining whether the California statute at issue had a "connection with" ERISA "such that application of the state law would frustrate ERISA's purposes":

(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;

(2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;

(3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and

(4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*Emard*, 153 F.3d at 958 (quoting *Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998)). The *Emard* court determined that the first three factors were not at issue and then rejected the contention that the California statute violated the fourth factor "by altering the administrative process for plans in California and by altering the designation of beneficiaries." *Emard*, 153 F.3d at 958.

■ Although ERISA preempts state laws affecting the *administration* of employee plans, RCW 11.07.010, like the California statute at issue in *Emard*, "does not affect the administration of plans; instead, it affects merely the ultimate ownership of distributed benefits." *Emard*, 153 F.3d at 959. As with the California statute at issue in *Emard*, under RCW 11.07.010,

> an ERISA administrator may pay insurance to the named beneficiary unless a contending claimant properly notifies the plan of his or her claim to the proceeds. In the absence of such a claim, payment to the named beneficiary absolves the plan of liability for further claims. California law therefore does not alter plan administration.

*Emard*, 153 F.3d at 959 (citations omitted). But if a "contending claim is made before disbursement, the administrator can leave the determination of the proper recipient of the proceeds to the parties through application of state property law[.]"[12]

The court also noted that:

> [u]nder the majority approach of [previous] opinions [concerning ERISA preemption], application of California law concerning the designation of a beneficiary has a connection with ERISA and would therefore be preempted. Those opinions, though, rely on the Supreme Court's former approach to ERISA preemption, and their analyses therefore provide us little guidance. Applying the preemption approach required by the Court's recent cases, we hold that ERISA does not preempt California's law of community property in this instance.

*Emard*, 153 F.3d at 956-57. The court saw "no indication that Congress intended to safeguard an individual beneficiary's rights to the proceeds of an ERISA insurance plan as against another person claiming superior rights, under state law, to those proceeds." *Emard*, 153 F.3d at 958. The court also recognized that

---

[12]The *Emard* court did not address the situation where a competing claim was made for insurance proceeds *after* the proceeds had already been distributed to the named beneficiary. It is an issue in this case, but RCW 11.07.010 provides resolution.

in the circumstances of a case such as this, the plan administrator must take certain steps to answer the complaint and either disburse the disputed funds to the prevailing claimant or deposit the funds with the court. But this burden on the administrator is too slight to overcome the presumption against preemption of state family and family property law.

*Emard*, 153 F.3d at 959 (citing *Boggs v. Boggs*, 520 U.S. 833, 117 S. Ct. 1754, 1760, 138 L. Ed. 2d 45 (1997); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979)).[13]

As the final step of preemption analysis, the *Emard* court noted that Congress has not completely occupied this field such that state laws are preempted. *Emard*, 153 F.3d at 960-61 (citing *Boggs*, 117 S. Ct. at 1760). "Congress preempted state laws relating to *plans*, rather than simply to *benefits*." *Coyne*, 482 U.S. at 11.

Because California's law does not regulate ERISA plans (other than operating to redesignate the beneficiary), the *Emard* court found that ERISA did not bar application of state law. *Emard*, 153 F.3d at 961. The Ninth Circuit believed that "Congress did not preempt state rules" with regard to alternate distribution of insurance proceeds: "State community property laws 'implement policies and values lying within the traditional domain of the states.' " *Emard*, 153 F.3d at 961 (citing *Boggs*, 117 S. Ct. at 1760).

Courts therefore require that

State family and family-property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden.

---

[13]Furthermore, as other courts have noted, "[b]lindly paying the proceeds as specified in the [plan documents] would be inconsistent with the statutory preemption exception that recognizes the validity of domestic relations orders affecting beneficiary designations." *See, e.g. Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1121 (10th Cir. 1991). Similarly, contrary to Donna's assertions here, holding that RCW 11.07.010 is not preempted will not complicate the administration of ERISA-covered plans in Washington. "ERISA already requires an administrator of a pension plan to investigate the marital history of a participant and determine whether a domestic relations order exists that could affect the distribution of benefits." *Carland*, 935 F.2d at 1122. Compliance with RCW 11.07.010 requires no more.

*Hisquierdo*, 439 U.S. at 581. ERISA does not preempt application of state laws that merely redesignate the beneficiary under an ERISA plan, because such laws do not do "major damage" to a "clear and substantial" federal interest. *Emard*, 153 F.3d at 961.

■ While we are not bound by the Ninth Circuit's interpretation of ERISA preemption,[14] we find it persuasive and adopt its analysis in *Emard*. *Emard* is consistent with the United States Supreme Court's current interpretation of ERISA preemption. The Supreme Court's recent cases indicate that ERISA preemption has been much too broadly construed in the past and must be narrowed; *Emard* follows that directive in a principled, logical manner. Although *Emard* addresses only life insurance, the same principle should apply to pension fund benefits.

■ We therefore hold that, under the circumstances of the case before us, ERISA does not preempt RCW 11.07.010, a statute similar to the one at issue in *Emard*.[15] Consequently, under the plain language of the statute, the children are entitled to the proceeds of their father's pension fund, which have not yet been distributed. They are also entitled to the insurance proceeds.

But whether they can look to the insurer for this amount depends on whether the children demanded the insurance proceeds in compliance with the requirements of RCW 11.07.010.[16] If they did not comply with RCW 11.07.010, the children will not be able to recover the insurance

---

[14]Even where the matter is one of federal law, Washington courts are not bound by the interpretations of nonconstitutional federal law rendered by inferior courts—even the Ninth Circuit. *State v. Barefield*, 110 Wn.2d 728, 732 n.2, 756 P.2d 731 (1988); *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 75 S. Ct. 452, 99 L. Ed. 600 (1955).

[15]Although statutes similar to RCW 11.07.010 have been found to be preempted, all of those cases arose before the Supreme Court announced its new reasoning with regard to ERISA preemption. *See, e.g., Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126 (6th Cir. 1996).

[16]The plan administrator must have actual knowledge of dissolution and/or conflicting claims for proceeds of a given policy before being liable for the decision to make payment to the named beneficiary. RCW 11.07.010(3).

proceeds from the insurer, but instead will have to look solely to Donna for the funds.[17] RCW 11.07.010(3).

We reverse summary judgment granted to Donna and remand for entry of summary judgment for the children with regard to the pension plan and life insurance proceeds.[18]

---

[17]As Donna notes, seemingly the most relevant Washington case is *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 689 P.2d 46 (1984). *Wadsworth* involved a remarried man dying while his ex-wife was still designated as beneficiary of his life insurance policy. The woman to whom he was married at the time of his death opposed his ex-wife's collecting under the policy. Without mentioning ERISA, the court ruled:

> In general, the beneficiary named in the policy will be entitled to the proceeds to the extent that the present spouse's community property rights are not invaded. We believe this general rule should not apply, however, where the dissolution decree clearly indicates an intent to divest the former spouse of his or her expectancy as beneficiary, so long as that intention is acted upon within a reasonable time after dissolution by formal execution of the change of beneficiary. If the intention is not acted upon within a reasonable time [conclusive presumption after one year after date of dissolution], the owner should be deemed to have decided to retain the named beneficiary as the one entitled to the proceeds.

*Wadsworth*, 102 Wn.2d at 662. The court added, "if the insured spouse dies within a reasonable time period without formally executing the previously stated intention to change the beneficiary, the former spouse will not be entitled to the proceeds." *Wadsworth*, 102 Wn.2d at 663.

Because the Egelhoff divorce decree did not mention the life insurance policy, Donna could arguably be entitled to the insurance proceeds under *Wadsworth*. But whether *Wadsworth* is still good law is highly questionable on two grounds: (1) The opinion does not mention ERISA (and seems to have concerned an ERISA-covered policy, given that it was "paid in full on a monthly basis as a benefit of employment by the Boeing Company." *Wadsworth*, 102 Wn.2d at 654); and (2) RCW 11.07.010 was not in existence at the time of the *Wadsworth* decision (RCW 11.07.010 was originally enacted by LAWS OF 1993, ch. 236, § 1). As a result, we look elsewhere, namely the Ninth Circuit's opinion in *Emard*, for a contemporary analysis.

[18]Donna is clearly liable to the children for the insurance proceeds. But a determination, under RCW 11.07.010, of whether the children can look to the insurer for the life insurance benefits erroneously paid to Donna, or whether they can look only to Donna herself for reimbursement of the funds she wrongfully received, cannot appropriately be made as part of the present action. Because the insurer, Aetna, is not a party to this case, the children will have to bring a separate action against Aetna should they seek to recover from it the proceeds wrongly paid to Donna.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.

Review granted at 137 Wn.2d 1032 (1999).