[No. 67626-7. En Banc.]

Argued October 14, 1999.     Decided November 18, 1999.

*In the Matter of the Estate of* DAVID A. EGELHOFF.

SAMANTHA EGELHOFF, ET AL., *Respondents*, v. DONNA RAE EGELHOFF, ET AL., *Petitioners*.

558

*McGavick Graves*, by *Henry Haas*, for petitioners.

*Jordan & Imler,* by *Michael W. Jordan,* for respondents.

*Perkins Coie L.L.P.,* by *Bruce Douglas Corker* and *Kurt Edwin Linsenmayer,* on behalf of Boeing Company, Boeing Company Employee Benefit Plan, Puget Sound Energy, Inc., Safeco Corporation, and Weyerhaeuser Company, amicus curiae.

*Rochelle Kleinbert* of *United States Department of Labor* (*W. Iris Barber* and *Alexander Fernandez,* of counsel), on behalf of the Secretary of Labor, amicus curiae.

*Debra Leigh Stephens* and *Bryan Patrick Harnetiaux,* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

*Mark E. Brennan* (*Terence Craig* and *Brian Black,* of counsel), on behalf of Sheet Metal Workers' National Pension, amicus curiae.

SMITH, J. — Petitioner Donna Rae Egelhoff, recently divorced former spouse of Decedent David A. Egelhoff,

seeks review of a decision of the Court of Appeals, Division Two, which reversed orders of summary judgment granted by the Pierce County Superior Court in her favor in an action by Respondents, Samantha Egelhoff and David Egelhoff (David A. Egelhoff, Jr.), children of decedent from a prior marriage.[1] The Court of Appeals reasoned the children of decedent were entitled to the benefits of decedent's pension plan and employment-based life insurance policy under RCW 11.07.010, and that the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, did not preempt a state statute which revoked entitlement of a former spouse to life insurance proceeds and pension plan benefits upon dissolution of a marriage. We affirm.

## QUESTION PRESENTED

The question presented in this case is whether under RCW 11.07.010 Decedent David A. Egelhoff's designation during their marriage of his then-spouse, Donna Rae Egelhoff, as beneficiary of his pension plan and employment-based life insurance policy was revoked upon dissolution of their marriage and whether any disposition under the insurance policy and pension plan is preempted by ERISA.

## STATEMENT OF FACTS

The facts in this case are stipulated.[2] Decedent David A. Egelhoff and Donna Rae Egelhoff were married on Novem-

---

[1]The caption of the case illogically refers to Petitioners as "Donna Rae Egelhoff and John Doe Egelhoff, wife and husband." The Estate of David A. Egelhoff declined to participate in this appeal.

[2]Pet. for Review to Washington State Supreme Court of Court of Appeals' Decision Terminating Review, filed Jan. 27, 1999, at 1-5; see also Clerk's Papers (No. 96-2-12626-3) at 122-24.

ber 4, 1988 in Tacoma, Washington.[3] They separated on October 1, 1993.[4]

During their four and one-half year marriage, Decedent David A. Egelhoff designated Donna Rae Egelhoff as beneficiary under his Disability and Life Insurance Plan[5] and his Defined Contribution Profit Sharing Plan,[6] jointly provided by him and his employer, the Boeing Company.[7]

The parties stipulated that ERISA governs administration of David A. Egelhoff's Boeing life insurance policy and pension plan. Petitioner Donna Rae Egelhoff filed a pro se petition for dissolution of marriage in the Pierce County Superior Court on December 30, 1993.[8] A decree of dissolution was entered on April 22, 1994.[9] In a document incorporated in the decree,[10] David A. Egelhoff was awarded "100% of his Boeing retirement 401K and IRA."[11]

On June 23, 1994, two months after the dissolution, Decedent David A. Egelhoff was injured in an automobile accident.[12] He died from his injuries on July 8, 1994.[13] He

---

[3]Pet. for Review at 1.

[4]*Id.* at 2.

[5]Clerk's Papers (No. 96-2-12626-3) at 100-14. (An incomplete "summary" of the Boeing Company's Disability and Life Insurance Plan is included in the record).

[6]Clerk's Papers (No. 94-4-01619-1) at 38-52. The Boeing Company's employee "pension plan" is also referred to as a Voluntary Investment Plan.

[7]Pet. for Review at 2-5.

[8]Clerk's Papers (No. 94-4-01619-1) at 87.

[9]Clerk's Papers (No. 96-2-12626-3) at 61-69. David A. Egelhoff and Donna Rae Egelhoff agreed on Findings of Fact and Conclusions of Law, incorporating Exhibits "A" and "B." Exhibit "A" identifies property awarded to David A. Egelhoff and Donna Rae Egelhoff individually, while Exhibit "B" identifies liabilities of each party.

[10]*Id.* at 67 (Ex. "A").

[11]*See* 26 U.S.C. § 401(k) and 26 U.S.C. § 408(a) (Definitions of "401K" and "IRA").

[12]Clerk's Papers (No. 96-2-12626-3) at 27.

[13]*Id.*

died intestate.[14] At the time of his death, Donna Rae Egelhoff remained beneficiary of record under both his life insurance policy and his pension plan.[15] Decedent was paying court-ordered child support at the time of his death.[16]

The proceeds of Decedent David A. Egelhoff's life insurance plan, totaling $46,000.00, were paid to his former spouse, Petitioner Donna Rae Egelhoff, on August 3, 1994.[17] On November 15, 1996, decedent's statutory heirs,[18] Samantha Egelhoff, a minor, and David Egelhoff, children from his first marriage to Kate Breiner,[19] filed a complaint against Donna Rae Egelhoff in the Pierce County Superior Court to recover the proceeds of their father's life insurance which had been paid to her.[20] She filed her answer on August 6, 1997, asserting the heirs' claims are preempted by ERISA, 29 U.S.C. § 1144(a).[21] She then filed a motion for summary judgment on August 27, 1997.[22] The heirs, relying upon RCW 11.07.010, opposed the motion, arguing that

[14]Pet. for Review at 2.

[15]*Id.* at 3-6.

[16]*Id.*

[17]Clerk's Papers (No. 96-2-12626-3) at 95-97.

[18]*See* RCW 11.04.015, which provides in pertinent part:

"**11.04.015 Descent and distribution of real and personal estate.** The net estate of a person dying intestate, or that portion thereof with respect to which the person shall have died intestate, shall descend subject to the provisions of RCW 11.04.250 and 11.02.070, and shall be distributed as follows:

". . . .

"(2) Shares of others than surviving spouse. The share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse, shall descend and be distributed as follows:

"(a) To the issue of the intestate; if they are all in the same degree of kinship to the intestate, they shall take equally, or if of unequal degree, then those of more remote degree shall take by representation.

". . . ."

[19]Pet. for Review at 2.

[20]Clerk's Papers at (No. 96-2-12626-3) 1-5.

[21]*Id.* at 6-10.

[22]*Id.* at 11-12.

Washington law revoked Petitioner's designation as beneficiary under the life insurance plan.[23]

On October 10, 1997, the Pierce County Superior Court, the Honorable Frederick B. Hayes, granted summary judgment in favor of Petitioner Donna Rae Egelhoff.[24] The court concluded that David A. Egelhoff's life insurance plan "should be administered in accordance with the Employment Retirement Income Security Act and the designated beneficiary, Donna Rae Egelhoff shall have all legal rights to the proceeds which have been paid thereto."[25]

On May 30, 1997, while asserting a claim to their father's life insurance proceeds, the heirs also moved for summary judgment to recover his pension plan benefits then held by Boeing.[26] The Boeing Company's employee pension plan provided that the children of the deceased become beneficiaries if the proceeds do not pass to the named beneficiary and there is no surviving spouse.[27] Respondents claimed that under the property distribution incorporated in the dissolution decree Petitioner Donna Rae Egelhoff waived her right to benefits under their father's pension plan.[28]

On August 8, 1997, the Pierce County Superior Court, the Honorable Karen L. Strombom, ordered that the pension plan benefits "should be administered in accordance with the Employment Retirement Income Security Act of 1974 ('ERISA') and that the designated beneficiary, Donna Rae Egelhoff shall have all legal rights thereto[.]"[29] In ad-

---

[23]*Id.* at 13-26 (The heirs also submitted to the trial court a certified statement of Kate Breiner purporting to establish that "D[onna] E[gelhoff] knew that D[avid] E[gelhoff] intended to remove her as beneficiary and that it was the apparent agreement of D[onna] E[gelhoff] and the decedent.").

[24]*Id.* at 42-44.

[25]*Id.* at 43.

[26]Clerk's Papers (No. 94-4-01619-1) at 1-2.

[27]*Id.* at 45.

[28]Respondents valued their father's pension plan benefits on May 28, 1997 at $35,000.00, subject to federal taxes. *Id.* at 6-22.

[29]*Id.* at 115.

dition, the court stayed the order for summary judgment on August 15, 1997 and directed that pension plan benefits not be distributed to any party pending outcome of the case on appeal.[30]

Respondents, the statutory heirs, on August 15, 1997 filed in the Court of Appeals, Division Two, an appeal of the order disposing of their father's *pension plan benefits*.[31] On October 22, 1997, they filed an appeal of the order disposing of their father's *life insurance benefits*.[32] The Court of Appeals on November 13, 1997 granted their motion for consolidation of both cases.[33] On December 23, 1998, the Court of Appeals, Division Two, the Honorable J. Robin Hunt writing, reversed the summary judgments of the Pierce County Superior Court, concluding that RCW 11.07.010 was not preempted by ERISA.[34] The court determined the children of Decedent David A. Egelhoff were entitled to the benefits of his pension plan and employment-based life insurance under that statute.[35] The court reasoned the Washington statute did not have a "reference to" nor a "connection with" the ERISA plan, and did not significantly affect administration of the plan,[36] thus lawfully invalidating designation of the former spouse, Donna Rae Egelhoff, as beneficiary on any nonprobate asset held by ERISA plan participant Decedent David A. Egelhoff at the time of dissolution of their marriage.

---

[30]*Id.* at 117-18.

[31]*Id.* at 120.

[32]Notice of Appeal to Ct. of Appeals, Division II (No. 96-2-12626-3) filed Oct. 22, 1997.

[33]Letter of the Clerk of the Ct. of Appeals, Division II, dated Nov. 13, 1997.

[34]*In re Estate of Egelhoff*, 93 Wn. App. 314, 968 P.2d 924 (1998), *review granted*, 137 Wn.2d 1032 (1999).

[35]*Id.* at 327.

[36]*Id.* at 324-25.

Petitioner Donna Rae Egelhoff petitioned this court for review which was granted on June 1, 1999.[37]

## DISCUSSION

Prior RCW 11.07.010 provided:[38]

(1) This section applies to all nonprobate assets, wherever situated, held at the time of entry by a superior court of this state of a decree of dissolution of marriage or a declaration of invalidity.

*(2)(a) If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.*

. . . .

(5) As used in this section, "nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under only the following written instruments or arrangements other than the decedent's will:

*(a) A payable-on-death provision of a life insurance policy, employee benefit plan, annuity or similar contract, or individual retirement account[.]*

. . . .

(Emphasis added.)

Petitioner claims RCW 11.07.010 is preempted by ERISA. She contends the broad preemption provision under 29 U.S.C. § 1144(a) precludes application of the state statute,

---

[37]Order Granting Pet. for review (No. 67626-7) dated June 1, 1999.

[38]Laws of 1993, ch. 236, § 1 (emphasis added). The statute was amended in 1994 and 1997, but the amendments are not relevant to this case.

RCW 11.07.010, to this case. Respondents argue, to the contrary, that RCW 11.07.010 is not preempted by ERISA. They assert that the statute lawfully invalidated Petitioner's status as an ERISA plan beneficiary of their father's nonprobate assets upon dissolution of her marriage to their father. They argue that there is consequently no named beneficiary under their father's pension plan and life insurance policy; and that his children should receive the benefits under his pension plan.[39] The Court of Appeals agreed with Respondents and awarded to them their father's pension plan benefits and life insurance proceeds.

## PREEMPTION

■ ERISA is a comprehensive federal statute which regulates employee pension and welfare plans.[40] It is designed to promote the interests of employees and their beneficiaries in employee benefit plans.[41] ERISA contains a broad preemption provision that supersedes state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a) states "[ERISA] shall supersede any and all State laws

---

[39]David A. Egelhoff's Voluntary Investment [pension] plan provides:

"The VIP Office will only recognize beneficiary designations and changes that are filed on the official VIP beneficiary designation form and received before your death. You may not designate or change a beneficiary by using other documents such as divorce decrees, prenuptial agreements, wills or trusts. If you have not designated a beneficiary on the appropriate form, you have an invalid beneficiary designation, or your beneficiary is no longer living, benefits will be paid in the following sequence:

"1. To your surviving spouse.

"2. If there is no surviving spouse, to your children in equal shares.

"3. To another relative designated by the Voluntary Investment Plan Committee or to your estate."

Clerk's Papers (No. 94-4-01619-1) at 45.

[40]29 U.S.C. §§ 1001-1461. *See Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 756, 881 P.2d 216 (1994), *cert. denied*, 515 U.S. 1169, 115 S. Ct. 2634, 132 L. Ed. 2d 873 (1995).

[41]*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S. Ct. 2890, 2896, 77 L. Ed. 2d 490 (1983); *see* 29 U.S.C. § 1001(b).

insofar as they . . . relate to any employee benefit plan [covered by the statute]."[42]

29 U.S.C. § 1144(a) reads:

### (a) **Supersedure; effective date**

Except as provided in subsection (b) of this section, *the provisions of this subchapter and subchapter III* of this chapter *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.* This section shall take effect on January 1, 1975.

(Emphasis added.)

In earlier United States Supreme Court cases, the Court characterized ERISA's preemption clause as "having a broad scope"[43] and an "expansive sweep,"[44] being "conspicuous [in] its breadth" and written in " 'deliberately expansive' language [that] was 'designed to "establish pension plan regulation as exclusively a federal concern." ' "[45]

In *Shaw v. Delta Air Lines, Inc.*, the United States Supreme Court concluded that state law "relates to" an employee benefit for purposes of § 1144(a) "if it has a connection with or reference to such a plan."[46] The Court also concluded that state law may "relate to" a benefit plan,

---

[42]Additional United States Supreme Court cases broadly interpreting ERISA's preemption language include: *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S. Ct. 2890, 2896, 77 L. Ed. 2d 490 (1983); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988); *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992).

[43]*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S. Ct. 2380, 2388-89, 85 L. Ed. 2d 728 (1985).

[44]*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S. Ct. 1549, 1552-53, 95 L. Ed. 2d 39 (1987).

[45]*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S. Ct. 403, 407, 112 L. Ed. 2d 356 (1990) and *Pilot Life Ins. Co.*, 481 U.S. at 46) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981)).

[46]*Shaw*, 463 U.S. at 97.

and consequently be preempted, "even if the law is not specifically designed to affect such plans, or the effect is only indirect" and includes preemption of laws that are consistent with ERISA's policies and substantive requirements.[47]

This court previously adopted the expansive interpretation of § 1144(a) announced by the United States Supreme Court in *Ingersoll-Rand*, and has consistently held that if the court's attention must be directed to an ERISA plan, the cause of action then "relates to" the ERISA plan.[48]

■ Recently, however, ERISA preemption analysis by the United States Supreme Court, as evidenced by *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*,[49] has signaled a significant retreat from its expansive reading of § 1144(a). The Court in *Travelers* departed from its previous direction in defining the "expansive sweep"[50] of § 1144(a). The Court indicated it was discarding "uncritical literalism" in favor of the objectives of ERISA "as a guide to the scope of the state law that Congress understood would survive."[51] The Court of Appeals, Division One, has also adopted a narrower reading of ERISA's preemption clause.[52]

While the Court in *Travelers* again noted the expansive scope of the language of the preemption clause, it stated, nonetheless, that "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA stat-

---

[47]*Id.*

[48]*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990); *Cutler*, 124 Wn.2d at 763 (quoting *Ingersoll-Rand*, 498 U.S. at 140); *see also Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.*, 123 Wn.2d 565, 568-70, 870 P.2d 960 (1994); *Boutillier v. Libby, McNeill & Libby, Inc.*, 42 Wn. App. 699, 713 P.2d 1110, *review denied*, 106 Wn.2d 1005 (1986).

[49]514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).

[50]*Pilot Life Ins. Co.*, 481 U.S. at 47.

[51]*Travelers*, 514 U.S. at 656.

[52]*See Kahn v. Salerno*, 90 Wn. App. 110, 951 P.2d 321 (1998); *Ironworkers Dist. Council v. Woodland Park Zoo Planning & Dev.*, 87 Wn. App. 676, 942 P.2d 1054 (1997).

ute."[53] The basic objective of Congress, the Court concluded, "was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."[54] The Court acknowledged its prior decisions have held that ERISA preempted state laws that mandated employee benefit structures or their administration, as well as state laws providing alternative enforcement mechanisms.[55] But the Court did not strike down the state law in that case[56] because, while having some indirect economic impact, the law did not bind employee plan administrators to any particular choice of plan or preclude the uniform provision and administration of plans.[57]

United States Supreme Court decisions following *Travelers*[58] clarified ERISA's preemptive reach to involve the "identi[fication of] the field in which ordinary field preemption applies . . . . and, . . . ordinary conflict preemption."[59] In *California Division of Labor Standard Enforcement v. Dillingham Construction, N.A.*, the Court relied upon *Travelers* in analyzing a state statute with the "presumption that ERISA did not intend to supplant it."[60]

---

[53]*Travelers*, 514 U.S. at 656.

[54]*Id.* at 657.

[55]*Id.* at 658.

[56]The New York statute, N.Y. PUB. HEALTH LAW § 2807-c (McKinney), required hospitals to collect surcharges from patients covered by commercial insurers but not those covered by Blue Cross or Blue Shield Plans.

[57]*Travelers*, 514 U.S. at 659-60.

[58]*See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997); *see also John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 99, 114 S. Ct. 517, 126 L. Ed. 2d 524 (1993).

[59]*Dillingham*, 519 U.S. at 336 (Scalia, J., concurring) (emphasis omitted) ("Relate to" is not a test for preemption but simply an identification of the field in which ordinary field preemption applies—the field of laws regulating employee benefit plans).

[60]*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 331-32, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997) (the Court upheld a law prohibiting payment of lower wages to apprentices trained in unapproved programs).

The Court stated that in areas traditionally left to state regulation,[61] and with which ERISA is not expressly concerned, it would be "unsettling" to hold that state law is preempted whenever it has an indirect effect on ERISA plans.[62]

Similarly, the Court in *DeBuono v. NYSA-ILA Medical & Clinical Services Fund* concluded that ERISA did not modify the initial presumption against preemption.[63] The Court observed that the statute in that case[64] neither prohibited a method of calculating benefits that federal law permitted nor required employers to provide certain benefits. The case was not one in which the existence of a pension plan was critical to the state law cause of action or in which the state statute expressly referred to ERISA plans.[65] The Court noted that in past decisions describing the expansive nature of the preemption, it had not been necessary to rely on that expansive character in finding preemption because the state laws at issue had a clear connection with or reference to ERISA plans.[66]

The effect of *Travelers* and its progeny favors a retreat from the expansive preemption doctrine this court has previously followed to ensure ERISA's objective of protecting workers and Washington's sovereign interest in exercis-

---

[61]Stating an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 325 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947)); *see also Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383, 120 L. Ed. 2d 73 (1992) (State law is preempted by ERISA where it is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

[62]*Dillingham*, 519 U.S. at 330-31.

[63]520 U.S. 806, 117 S. Ct. 1747, 138 L. Ed. 2d 21 (1997).

[64]*DeBuono*, 520 U.S. at 809. (The statute, N.Y. PUB. HEALTH LAW § 2807-d (McKinney), imposed a tax on a medical center operated with ERISA funds).

[65]*Id.* at 814-15.

[66]*Id.* at 813.

ing its traditional police powers in the area of domestic relations and family law.

### LIFE INSURANCE PROCEEDS

■ The Court of Appeals decided the issue of entitlement to Decedent David A. Egelhoff's life insurance proceeds by reference to statutes and case law,[67] but did not consider whether decedent's life insurance plan is a "welfare benefit plan" or a "pension benefit plan."[68] Petitioner asserts ERISA preempts RCW 11.07.010 as it relates to decedent's life insurance plan and his pension plan. Respondents argue to the contrary that the United States Supreme Court made a distinction between "welfare" and "pension" plans, finding that Congress elected to regulate pension benefit plans more rigorously than welfare plans.[69] Respondents conclude that consequently decedent's life insurance plan is a "welfare benefit plan" and not subject to ERISA preemption under its antialienation and preemption provisions. According to Respondents, RCW 11.07.010 would control and invalidate Petitioner Donna Rae Egelhoff's designation as beneficiary under Decedent David A. Egelhoff's life insurance plan. Respondents assert they were properly awarded the proceeds of their father's life insurance by the Court of Appeals.

Amicus Curiae Secretary of Labor[70] states that ERISA's antialienation provision, 29 U.S.C. § 1056(d), involves only

---

[67]*Egelhoff*, 93 Wn. App. at 320-21. The Court of Appeals relied upon the Uniform Simultaneous Death Act (USDA), chapter 11.05 RCW, and RCW 48.18.390 (beneficiary treated as having predeceased policyholder, leaving life insurance proceeds to the policyholder's estate) and case law (statutory heirs inherit the life insurance policy proceeds when policyholder dies intestate).

[68]*See* Br. of Appellant, Ct. of Appeals, Division II, at 34-36; *see* 29 U.S.C. § 1002(3) which states "[t]he term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan . . . ."

[69]Br. of Appellant at 35 (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988); *Equitable Life Assurance Soc'y of the U.S. v. Crysler*, 66 F.3d 944 (8th Cir. 1995).

[70]Briefs Amicus Curiae were filed in support of Appellant Donna Rae Egelhoff by the Secretary of Labor; the Boeing Company; the Boeing Company Employee Benefit Plans Committee; Puget Sound Energy, Inc.; Safeco Corporation; Weyer-

"pension" plans and does not involve "welfare" plans.[71] A review of the ERISA statute supports this conclusion.[72] Under ERISA a "pension" plan must include provisions prohibiting the alienation of "pension" benefits, but "welfare" plan benefits are exempt from this requirement. We follow the reasoning of the United States Supreme Court in *Mackey v. Lanier Collection Agency & Service, Inc.*[73] and conclude that Respondents, the children of Decedent David A. Egelhoff, are entitled to the proceeds of his employment-based life insurance policy.

### PENSION PLAN PROCEEDS

The interpretation of "field preemption" and "conflict preemption" clarified in *Travelers* is pivotal to any discussion of ERISA preemption. In determining the scope of the "field" occupied by ERISA, federal laws will not preempt state statutes in areas that are "remote from the areas with which ERISA is expressly concerned—'reporting, disclosure, fiduciary responsibility, and the like.' "[74] Preemption analysis requires consideration of the objectives of Congress in enacting ERISA—the promotion of employee interests and the protection of those interests

---

haeuser Company; the Sheet Metal Workers' National Pension Fund. The Washington State Trial Lawyers Association Foundation filed a brief amicus curiae in support of Respondents.

[71]Amicus Br. of the Secretary of Labor at 11.

[72]The antialienation provision of ERISA, 29 U.S.C. § 1056(d)(1), states "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1051(1) "appl[ies] to any employee benefit plan . . . other than—(1) an employee welfare benefit plan[.]" Under 29 U.S.C. § 1002(1) "[t]he terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program . . . established or . . . maintained for the purpose of providing *for its* participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."

[73]486 U.S. 825, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988).

[74]*Dillingham*, 519 U.S. at 330 (quoting *Travelers*, 514 U.S. at 661).

against mismanagement by plan administrators.[75] Effectuating the areas of ERISA's primary concern leaves to the States the duty to regulate local matters even when such regulation has an indirect impact upon or slight connection with ERISA plans.[76] The United States Court of Appeals for the Ninth Circuit observed in *Emard v. Hughes Aircraft Co.*[77] that "ERISA's preemption clause no longer has the power to transmute into a federal question every issue that brushes against the periphery of an ERISA plan."[78] The use of a federal statute to forbid state regulation in "areas where ERISA has nothing to say"[79] would unjustly restrain the legitimate exercise of the states' historic police powers[80] without achieving the objectives sought by Congress.

■ Petitioner Donna Rae Egelhoff and amici curiae[81] assert that RCW 11.07.010 does not apply to ERISA plans. This is not correct. The fact is that the statute may apply to ERISA plans. The question is whether it is preempted by ERISA. RCW 11.07.010 involves an area of domestic and family law that has long been the traditional domain of the states.[82] In areas involving traditional state regulation, "the starting presumption [is] that Congress does not

---

[75]*Massachusetts v. Morash*, 490 U.S. 107, 114, 109 S. Ct. 1668, 104 L. Ed. 2d 98 (1989).

[76]*See Travelers*, 514 U.S. at 661-62.

[77]153 F.3d 949 (9th Cir. 1998), *cert. denied*, 525 U.S. 1122, 119 S. Ct. 903, 142 L. Ed. 2d 902 (1999).

[78]*Emard*, 153 F.3d at 961.

[79]*Dillingham*, 519 U.S. at 330.

[80]*Rice*, 331 U.S. at 230.

[81]Amicus Curiae Washington State Trial Lawyers Association Foundation does not join in these assertions.

[82]*Boggs v. Boggs*, 520 U.S. 833, 840, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997); *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 808, 59 L. Ed. 2d 1 (1979); *see also Rose v. Rose*, 481 U.S. 619, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987).

intend to supplant state law."[83] Petitioner has the considerable burden of overcoming this presumption.[84]

A state law "relates to" an ERISA plan if it either "refers to" or has a "connection with" such a plan.[85] Under the first part of this inquiry, "reference to" an ERISA plan means the state law must act "immediately and exclusively" upon the ERISA plans,[86] or alternatively, the existence of ERISA plans which are "essential to the law's operation."[87] It is not sufficient that the statutory definition of nonprobate assets under RCW 11.07.010(5)(a) merely mentions an "employee benefit plan."[88] The statute does not apply immediately and exclusively to an ERISA plan, nor is the existence of such a plan essential to operation of the statute.[89]

This court must address whether RCW 11.07.010 has a sufficient "connection with" an ERISA plan to compel preemption. This is characterized as "conflict preemption analysis." Generally, a state law has a connection with an ERISA plan if it mandates plan benefit structures[90] or some aspect of their administration.[91] In these situations requir-

---

[83]*Travelers*, 514 U.S. at 654-55.

[84]*DeBuono*, 520 U.S. at 814.

[85]*Shaw*, 463 U.S. at 96-97.

[86]*Mackey*, 486 U.S. at 830 (A Georgia anti-garnishment statute which applied solely to ERISA pension plans had a sufficient "reference to" ERISA plans, while a garnishment statute, general in scope, which applied to both ERISA and non-ERISA plans did not).

[87]*Dillingham*, 519 U.S. at 325.

[88]As in *Dillingham*, the Court rejected the argument that mention of "joint apprenticeship committee" related to ERISA plans where approved class of apprenticeship sponsors also included non-ERISA plans.

[89]*See Emard*, 153 F.3d at 954.

[90]*See Shaw*, 463 U.S. at 97 (ERISA preempted New York laws prohibiting employers from structuring benefit plans in a way that discriminated on the basis of pregnancy, and mandated payment of other specific benefits).

[91]*Travelers*, 514 U.S. at 657-58.

ing conflict preemption analysis,[92] a state law which directly or indirectly invades the core functions of ERISA regulation must give way to the comprehensive federal scheme favored by Congress under the four-factor approach of the Court of Appeals for the Ninth Circuit.[93]

However, the mere fact that RCW 11.07.010 may operate upon the beneficiary designation in an ERISA plan is not of itself a sufficient connection to require preemption. The statute operates under the legal fiction that "the former spouse [did not] survive the decedent, having died at the time of entry of the decree of dissolution . . . ."[94] Benefits under the plan remain to be distributed in accord with the plan documents under ERISA.[95] While a state statute such as RCW 11.07.010 may bring the default distribution provisions into effect, it does not alter the nature of the plan itself, the administrator's fiduciary duties, or the requirements for plan administration. The Washington Court of Appeals concluded in this case that the effect of RCW 11.07.010 upon an ERISA plan is " 'too slight to overcome

---

[92]Conflict preemption analysis requires a two-step inquiry to determine (1) whether the state law at issue conflicted with any specific provision of ERISA and (2) whether application of the state law would frustrate Congress' purpose in enacting ERISA. *See Emard*, 153 F.3d at 957-59.

[93]The United States Court of Appeals for the Ninth Circuit in *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993), identified four factors to determine whether a state law has a "connection with" an ERISA benefit plan: "(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans . . .; (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law . . .; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans . . .; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee." *Id.* (citations omitted).

[94]RCW 11.07.010(2)(a).

[95]29 U.S.C. § 1104(a)(1)(D) provides in pertinent part that "(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: . . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . . ."

the presumption against preemption of state family and family property law.' "[96] We agree.

The Ninth Circuit ERISA preemption analysis currently represents a minority view among other United States Circuit Courts,[97] that court in *Emard* concluding that California law did not affect the administration of ERISA plans but "merely the ultimate ownership of distributed benefits."[98] We find that decision at least persuasive in interpreting the impact of RCW 11.07.010 in this case.

Amicus Curiae Boeing claims a "connection" exists because requiring plan administrators to investigate the marital status of beneficiaries and to determine whether a beneficiary designation remains valid under state law increases the administrative burdens on the plan, with resultant increase of costs and depletion of plan resources available for benefits to employees.[99] Similar arguments have been rejected by the United States Supreme Court.[100] Our interpretation of field preemption under *Travelers*[101]

---

[96]*Egelhoff*, 93 Wn. App. at 326 (quoting *Emard*, 153 F.3d at 959).

[97]*See Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857 (4th Cir.1998); *Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997), *cert. denied*, 523 U.S. 1120, 118 S. Ct. 1799, 140 L. Ed. 2d 939 (1998); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir. 1994); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11 (2d Cir. 1993); *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904 (10th Cir. 1991); *MacLean v. Ford Motor Co.*, 831 F.2d 723 (7th Cir. 1987).

[98]*Emard*, 153 F.3d at 959.

[99]*See* Br. of Amici Curiae Boeing Co. et al. at 6-11.

[100]*See Travelers*, 514 U.S. at 659-61 (preemption rejected based on indirect economic influence on plan administration). *DeBuono*, 520 U.S. at 815-17 (Direct tax reducing fund assets that would otherwise be available to provide plan members with benefits was not sufficiently connected to ERISA plans to require preemption. "Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute.").

[101]The Court in *Travelers* recognized the possibility that "a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers, and that such a state law might indeed be pre-empted." *Id.* at 668. As stated by the Court of Appeals and argued by the Respondents, such "major damage" to ERISA's objectives cannot be shown

leads us to the conclusion that RCW 11.07.010 does not "relate to" or have a "connection with" such a plan.

Petitioner and supporting amici rely upon the amendments to ERISA in the antialienation provision, 29 U.S.C. § 1056(d)(1),[102] to support their claim that under *Boggs v. Boggs*[103] a direct conflict exists between RCW 11.07.010 and 29 U.S.C. § 1056(d)(1).[104] This assertion mischaracterizes the "field preemption" analysis under *Travelers*.

The United States Supreme Court in *Boggs* determined "conflict preemption" may defeat application of state law, without considering whether it "relates to" an ERISA plan, if the relevant law conflicts with a specific ERISA provision.[105] The Louisiana law in that case allowed a plan beneficiary to bequeath the beneficiary's equitable interest in benefit plan proceeds to a third party through the beneficiary's will.[106] This was in direct contravention of the antialienation provision requiring that proceeds be distributed solely in accordance with the plan documents or the terms

because of RCW 11.07.010. *Egelhoff*, 93 Wn. App. at 326 (quoting *Hisquierdo*, 439 U.S. at 581); *see* Supplemental Br. of Resp'ts at 2-6, 15; *see* Amicus Br. of the Wash. State Trial Lawyers Ass'n at 12.

[102]29 U.S.C. § 1056(d)(1) states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(3)(A) "appl[ies] to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a 'qualified domestic relations order.' " *See* 29 U.S.C. § 1056(d)(3)(B)(i) (defining a "qualified domestic relations order"). In general, the antialienation provision restricts diversion of plan benefits to someone other than a payee under the plan documents, unless executed in a specified manner to be recognized as a qualified domestic relations order" (QDRO). *See* 29 U.S.C. § 1056(d)(3)(A). ERISA provides a limited exception to the antialienation provision for QRDO's. This provision, enacted as part of the Retirement Equity Act of 1984 amendments, is intended to protect spouses and dependents of employees who participate in ERISA benefit plans. *See Boggs*, 520 U.S. at 846-48.

[103]520 U.S. 833, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997).

[104]Pet. for Review at 16-17; Secretary of Labor Amicus Br. at 5-11; Boeing Co., et al. Amicus Br. at 4-6.

[105]*Boggs*, 520 U.S. at 841.

[106]*Id.* at 836. (An "alternate payee" under a QDRO is considered a plan "beneficiary." 29 U.S.C. § 1056(d)(3)(J)).

of a limited statutory exception, such as the "qualified domestic relations order" (QDRO) exception.[107]

RCW 11.07.010 does not conflict with ERISA's antialienation provision because it does not operate to divert benefit plan proceeds from distribution under terms of the plan documents.[108] Amicus Secretary of Labor states that RCW 11.07.010 is "[l]ike the community property law in *Boggs*."[109] That is not correct. The statute in that case directed disposition of the proceeds of a benefit plan, and allowed plan beneficiaries to dispose of their share of the proceeds to alternate payees by testamentary transfer.[110] The United States Supreme Court concluded the transfer was in violation of the antialienation provision, which does not recognize state law mechanisms for distributing plan proceeds to a third party except under certain specific exceptions, such as when a former spouse receives benefits of a plan under the terms of a QDRO.[111]

RCW 11.07.010 does not require distribution of benefit plan assets to a third party, nor does it in any way direct payment of proceeds. It merely invalidates designation of a former spouse as beneficiary of a non-probate asset by creating the legal fiction that the spouse predeceased the now-deceased owner.[112] While the underlying circumstances to which the distribution scheme of an ERISA plan must be applied is altered, the plan administrator is not required to follow provisions for distributing the proceeds other than those in the plan. There is no diversion of plan

[107]*Boggs*, 520 U.S. at 846-51; *see also Ablamis v. Roper*, 937 F.2d 1450 (9th Cir. 1991). (California community property law providing for testamentary transfers to third party of plan beneficiary's equitable share in ERISA pension plan directly conflicted with antialienation provision).

[108]*See* Amicus Br. of the Wash. State Trial Lawyers Ass'n Found. at 14.

[109]Amicus Br. of the Secretary of Labor at 10.

[110]*Boggs*, 520 U.S. at 836-37.

[111]*Id.* at 851-52 (testamentary transfer under state law condemned as a diversion of retirement benefits in violation of ERISA).

[112]RCW 11.07.010(2)(a).

benefits.[113] Under federal preemption analysis, we conclude that the nexus between participant and beneficiary in this case is not compromised.[114]

Despite the reality of her survival, under RCW 11.07.010 Petitioner Donna Rae Egelhoff is legally considered to have predeceased the plan participant, Decedent David A. Egelhoff, with the result that there is no valid beneficiary designated in the plan. Without reliance upon any state distribution scheme, his children and heirs, Respondents, would receive his pension plan benefits. The resulting statutorily effected change in the underlying circumstances for administration of the plan does not impede the plan administrator's obligation to pay under the terms of the plan documents. There is no conflict with the specific ERISA provision proscribing alienation of benefits.

We conclude that RCW 11.07.010 is not preempted by ERISA. This statute, involving domestic relations and family law, is an area of law historically left to state control. RCW 11.07.010 does not "refer to" or have a significant "connection with" an ERISA plan to require preemption. Nor does RCW 11.07.010 conflict with any specific ERISA provision, including the antialienation clause under 29 U.S.C. § 1056(d)(1). Under this reasoning, we conclude that Petitioner Donna Rae Egelhoff is not entitled to benefits under her deceased former husband's pension plan. We need not address the question of waiver under the property settlement incorporated in the dissolution.

## SUMMARY AND CONCLUSIONS

Petitioner Donna Rae Egelhoff's claims for benefits under Decedent David A. Egelhoff's employment-based life insurance and pension plans were properly denied by the Court of Appeals, Division Two.

Recent United States Supreme Court cases following *New*

---

[113]*Boggs*, 520 U.S. at 851-52.

[114]*Id.*

*York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.* lead to the conclusion that the Court's former commitment to an expansive interpretation of ERISA's preemptive scope is yielding to a narrowed view of the field occupied by this statutory scheme. The effect of *Travelers* and cases following justify retreat from the expansive preemption doctrine our court has previously followed to ensure ERISA's objective of protecting workers and Washington's sovereign interest in exercising its traditional police powers in the area of domestic relations and family law.

Respondents' conclusion that the decedent's life insurance plan is a "welfare benefit plan" and not subject to ERISA preemption under its antialienation and preemption provisions has merit. RCW 11.07.010 invalidates Petitioner Donna Rae Egelhoff's designation as beneficiary under Decedent David A. Egelhoff's life insurance plan because she is by legal fiction considered to have died at the time their decree of dissolution was entered. Respondents were properly awarded the proceeds of their father's life insurance by the Court of Appeals.

Under the interpretation of "field preemption" and "conflict preemption" clarified in *Travelers*, RCW 11.07.010 does not "relate to" an ERISA plan. This statute neither "refers to" nor has a sufficient "connection with" an ERISA plan to justify preemption. Nor is RCW 11.07.010 directly in conflict with any specific provision of ERISA, including the antialienation provision under 29 U.S.C. § 1056(d)(1). Respondents were properly awarded the benefits under their father's pension plan.

We affirm the decision of the Court of Appeals, Division Two, which reversed the orders of summary judgment of the Pierce County Superior Court, and conclude that Respondents Samantha Egelhoff and David A. Egelhoff, Jr., the children and heirs of Decedent David A. Egelhoff, are entitled to receive the benefits under their father's pension plan and the proceeds of his life insurance.

Guy, C.J., Johnson, Madsen, Alexander, Talmadge, Sanders, and Ireland, JJ., and Coleman, J. Pro Tem., concur.